USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-1-14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILFREDO GONZALEZ,

                Plaintiff,

     -against-

NICHOLAS F. CHALK,

                Defendant.
------------------------------------------------------------x

13 Civ. 5486 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

        Plaintiff Wilfredo Gonzalez, an inmate at the Wende Correctional Facility ("WCF") in Alden, New York, brings this action pursuant to 42 U.S.C. § 1983 against defendant Nicholas F. Chalk, a hearing officer of the New York State Department of Corrections and Community Supervision ("DOCCS") who conducted Gonzalez's August 10, 2010 disciplinary hearing. At that hearing, Chalk found Gonzalez guilty of a lewd conduct offense based on an August 4, 2010 incident during an inmate count. Alleging that the conduct of the hearing violated of his right to due process of law under the Fourteenth Amendment, Gonzalez, who proceeds pro se, seeks injunctive relief, declaratory relief, and nominal damages. For the reasons set forth below, defendant's motion to dismiss the complaint is granted.

I. BACKGROUND

        According to Gonzalez, he has spent 28 years in the custody of DOCCS. ((Am. Compl., Dkt. No. 26, at 12)) Gonzalez has been incarcerated at WCF from before the time of the incident at issue here to the present.

On August 4, 2010, Correction Officer Jennifer Fay conducted an inmate count for Gonzalez's cell block at approximately 5:50 p.m. (Id. at 14) According to the "inmate misbehavior report" filed by Fay on the same day, she announced the inmate count and proceeded down the cell block; when she reached Gonzalez's cell she "observed inmate Gonzalez . . . standing, facing the cell door in plain view with his penis in hand stroking it." (Id.) Fay further reported that Gonzalez did not "make any attempt to conceal himself" and that "this exposure appeared to me to be intentional." (Id.)

Gonzalez states that he did not hear Fay's announcement of the inmate count because he suffers from a hearing impairment; he is usually notified of the count by his personal alarm, but on this occasion the count was conducted approximately ten minutes before the regularly scheduled time of 6:00 p.m. (Id. at 11) He states that at the time the inmate count was conducted he was urinating in his cell, and that what Fay perceived to be his "lewd conduct" was actually him "shaking [his] private part of the last remaining urine." (Id.) In his statement of facts, he explains that the toilet in his cell faces the cell door at an angle visible to a viewer from the outside of the cell, and that his exposure to the corrections officers was inadvertent or unintentional. (Id. at 12) According to Gonzalez, moments after the incident he was removed from his cell by several corrections officers and brought to the prison infirmary, where a "swab-test" was performed on his penis. (Pl. Aff. at 3(2)) From there, he was brought to the "Special Housing Unit" ("SHU"), a part of the WCF outside of the general prison population. (Id.)

The following morning, Gonzalez received a copy of Fay's misbehavior report, which cited him for violating rule 101.20 of the DOCCS Institutional Rules of Conduct. (Am. Compl. at 14) Rule 101.20 provides, "An inmate shall not engage in lewd conduct by intentionally masturbating in the presence of an employee, or intentionally exposing the private

parts of his or her body, unless as part of a strip frisk, strip search, medical examination or other authorized purpose." 7 N.Y.C.R.R. 270.2.

A disciplinary hearing on the matter was scheduled for August 10, 2010. (Pl. Aff. at 3(12)) Gonzalez requested assistance in preparation for his hearing, and a prison employee identified in the record only as Sergeant Bowers was assigned to Gonzalez's case. (Id. at 3(5)) Bowers met with Gonzalez on August 6, 2010. (Id.) At the meeting, Gonzalez requested three pieces of evidence for his hearing: the log book entry concerning the incident, the results of the alleged swab-test conducted after the incident, and two photographs showing the layout of his cell from the inside and from outside the window on his cell door through which Officer Fay observed him. (Id. at 3(6)) At 10:30 that evening, Bowers provided the log book entry but not the other items; he denied having ever heard of a swab test being conducted during his many years of employment at the prison, and deemed the photographs irrelevant to the charge. (Id. at 3(8)-3(11))

Gonzalez's hearing was conducted by defendant Chalk, a hearing officer, and was attended by Gonzalez, corrections officers including Officer Fay, and a correction counselor who served as an interpreter for Gonzalez, who speaks some English but whose primary language is Spanish. (Hearing Tr., Dkt. No. 26, Ex. E, at 1-2) The proceeding lasted approximately thirty-five minutes. (Tr. at 1, 11)

Early on in the hearing, Chalk asked Gonzalez whether his assistance in preparing for the hearing had been completed, and Gonzalez responded that he had not received two of the three pieces of evidence that he had requested. (Tr. at 3) Chalk questioned him as to the relevance of these items and ultimately changed the subject, stating, "Okay let me ah let me read the ah misbehavior report into the record and then you can bring this point up again. Ok?" (Id.)

The point did not come up again; at the close of the hearing, Chalk asked Gonzalez whether he had "any additional testimony to give or any procedural objections to make," and Gonzalez replied that he did not. (Tr. at 8)

Gonzalez also requested that a prison medical employee be called as a witness to prove his hearing impairment. (Tr. at 5) Chalk deemed such testimony unnecessary because Gonzalez's institutional record indicated his hearing impairment. (Tr. at 6) Fay's report was read into the record, and Gonzalez had his interpreter read a statement in his defense. (Tr. at 3-4) Next, Fay was called as a witness. (Tr. at 7) Her brief testimony was consistent with her report. (Id.) Gonzalez was given the opportunity to present three prepared questions to Fay, with Chalk posing the questions on his behalf. (Tr. at 8) Asked whether the situation could have been a misunderstanding, Fay responded, "No, definitely not." (Id.) After questioning Fay, Chalk asked Gonzalez whether he had any additional testimony or wished to raise any procedural objections. (Id.) Gonzalez stated that he did not, and Chalk closed the hearing. (Tr. at 8-9)

Ten minutes later, Chalk read his written disposition into the record, finding Gonzalez guilty of the charged offense and sentencing him to ninety days in the SHU. (Tr. at 9) Chalk stated that his conclusion was based on Fay's written report, and further stated that "[t]he reason for this disposition is this type of conduct will not be tolerated." (Id.) When Gonzalez objected that Chalk had ignored his statement, Chalk replied, "No, everything was taken into consideration." (Id.) When Gonzalez continued to object, Chalk explained his right to appeal and provided Gonzalez with a notice of appeal form. (Tr. at 10)

In his amended complaint, Gonzalez seeks a declaratory judgment stating that Chalk's actions violated Gonzalez's rights under the Due Process Clause of the Fourteenth

Amendment, an injunction ordering DOCCS to expunge the misconduct determination from his institutional record, nominal damages, and the cost of filing the suit.[1]  (Am. Compl. at 8-9)

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing a complaint, courts must draw all reasonable inferences in favor of the non-movant.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam).  Although a court deciding a motion under rule 12(b)(6) is generally limited to considering the facts stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into a motion for summary judgment.  See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

"A pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and quotation marks omitted).  Courts continue to afford special solicitude to pro se complaints after Iqbal and Twombly.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

---

[1] Gonzalez submitted an amended complaint as an attachment to his response papers. There are two material differences between the two complaints. The first involves the relief sought: the original complaint sought $100,000 in compensatory damages, while the amended complaint seeks predominantly non-monetary relief and does not seek any compensatory damages. The second is the injury of which he complains. The original complaint alleged pain and suffering and a denial of due process based on the hearing officer's denial of the "constitutional right to call witnesses, and to submits [sic] evidence in support of my defense against the charges." The amended complaint does not mention pain and suffering, and adds to the list of due process violations "denial of right to be heard and to impartial fact-finder, and finding Plaintiff guilty with no evidence to support charge . . . ." In light of plaintiff's pro se status, the court will consider the amended complaint as if filed and the motion to dismiss as if addressed to the amended complaint.

Plaintiffs' pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, pro se plaintiffs bringing an action under section 1983 must make specific claims, because "allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

## III. DISCUSSION

### A. Due Process Requirements in a Prison Disciplinary Hearing

To state a claim under section 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The amended complaint adequately alleges that Chalk, a hearing officer employed by the DOCCS conducting a disciplinary hearing, acted under color of state law.

To state a due process claim based on a prison disciplinary proceeding, a plaintiff must show that (1) he or she had a protected liberty interest in not being confined separately from the general prison population, and (2) that he or she was deprived of this liberty interest without due process of law. Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996). Chalk concedes for the purposes of this motion that Gonzalez's ninety-days confinement in the SHU is sufficient to implicate a liberty interest. Thus, the question presented is whether Gonzalez's disciplinary hearing comported with the requirements of due process under the Fourteenth Amendment.

Because "[p]rison disciplinary proceedings are not part of a criminal prosecution, [] the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To comport with procedural due process, prison authorities must provide an inmate charged with a violation in a disciplinary hearing with: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, (1985) (citing Wolff, 418 U.S. at 563-67). Further, under certain circumstances including the confinement of the inmate in the SHU, the inmate has a right to assistance in marshalling evidence and preparing a defense. Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988).

"Judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Hill, 472 U.S. at 455). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling. Id. (quoting Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)). The "some evidence" standard does require that conclusions be based on some "reliable evidence." Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004).

Finally, even where procedural irregularities take place in the conduct of a prison disciplinary hearing, the outcome of the hearing should not be overturned if the errors were harmless. Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991) ("In the absence of a recent pattern of violations, [] it is entirely inappropriate to overturn the outcome of a prison

disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial.").

### B. The Conduct of Gonzalez's Hearing Comported with the Requirements of Due Process

Here, though Gonzalez contends that his conviction for lewd conduct is unsupported by any evidence, the evidence before the hearing officer adequately satisfies the "some evidence" standard. Chalk's conclusions were expressly based on Fay's report, which stated that she personally observed Gonzalez holding his exposed penis and stroking it, and that the exposure appeared to her to be intentional. Gonzalez does not dispute that his penis was exposed to Fay, but states that the exposure was inadvertent or unintentional. This was a contested factual issue at the hearing. Before this Court, however, "[a]scertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455-56. In concluding that Gonzalez was guilty, Chalk expressly credited Fay's written report. Fay's written finding that Gonzalez's exposure appeared to be intentional was bolstered by her testimony at the hearing, where she responded to one of Gonzalez's questions by stating that the incident was "definitely not" a misunderstanding. (Tr. at 8).

Further, Gonzalez's disciplinary proceeding comported with the requirements of due process for such a hearing. See Hill, 472 U.S. at 454. First, Gonzalez was provided with advance written notice of the disciplinary charges on the morning after the incident, five days before the hearing was held. Second, Gonzalez was provided with an employee assistant who produced documentary evidence, and also was given the opportunity to call witnesses. He was given the log file relating to the incident, and was also permitted to call the corrections officer who wrote his misbehavior report as a witness, and to ask her questions. Third, Chalk's ruling at

the hearing was accompanied by a written disposition that recited the evidentiary basis for the decision and the reasons for the disciplinary sanctions imposed, which was read into the record at the conclusion of the hearing.

In addition to challenging the sufficiency of the evidence, Gonzalez raises three specific objections to the disciplinary hearing process, each of which he contends deprived him of due process of law. First, he objects to Chalk's refusal to require a medical witness to testify at the hearing. Second, he argues that the assistance he received in his preparation for the hearing was inadequate because the assisting officer did not provide him with the results of his alleged penis swab test and photographs of his cell. Third, he contends that Chalk's ruling against him was biased because Chalk declined to permit him to ask Fay whether he was facing the toilet in his cell when she saw him. As a matter of law, none of these purported procedural deficiencies constitutes a failure of due process.

1. Gonzalez's request for a medical witness

"[A] prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991). The burden is on the prison official to show the rationality of declining to call a witness. Id. at 30-31. This burden is satisfied when the official provides "some explanation" either during or subsequent to the hearing. See Russell v. Selsky, 35 F.3d 55, 58 (2d Cir. 1994). While prison officials need not put their reasons for refusing the inmate's request in writing or into the administrative record of the disciplinary hearing, due process does require that prison officials "at some point" state their reasons for refusing the inmate's request. Ponte v. Real, 471 U.S. 491, 492 (1985).

Here, the transcript shows that Chalk explained that the testimony of a medical witness was unnecessary to establish that Gonzalez had a hearing deficiency because Gonzalez's

record already indicated such a deficiency. Gonzalez's statement to Chalk explained his hearing impairment, and Chalk later stated that the hearing impairment was "well documented." (Tr. at 4, 6) After reading the disposition into the record at the conclusion of the hearing, when Gonzalez stated that Chalk had ignored his statement, Chalk responded that "everything was taken into consideration." (Tr. at 9) Chalk has adequately demonstrated the rationality of declining to call a medical witness.

2. Gonzalez's employee assistance and document requests

Gonzalez contends that his right to employee assistance was violated because the prison employee that assisted him did not provide him with photographs of his cell or with the results of his alleged penis swab test. Gonzalez was indisputably entitled to receive assistance in preparing for his trial, because shortly after the incident he was taken to the SHU, where he remained until the hearing was held. See Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir. 1988). In recognizing this right, the Second Circuit described the obligation to provide assistance:

> When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced. If the inmate's right to marshal evidence and present a defense is to mean anything, then an inmate so disabled must be provided with some assistance. Although this is not the occasion to define the assigned assistant's precise role and the contours of the assistant's obligations, such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself.

Id. at 897-98 (citations omitted). The assistance must be provided "in good faith and in the best interests of the inmate." Id. at 898. However, any violations of an inmate's right to assistance are reviewed to determine "whether the error was harmless or prejudicial." Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); see also Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009) ("any violations of this qualified right are reviewed for 'harmless error.' ").

An inmate's right to assistance is not a right to counsel. See Wolff, 418 U.S. at 570. In providing assistance to the inmate, a prison employee "is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (citing Wolff at 570).

Gonzalez requested employee assistance on the day after he received the misbehavior report, and Sergeant Bowers met with him that day. By 10:30 that evening, Bowers provided Gonzalez with the relevant log book entry. Bowers also told Gonzalez that he did not know whether any medical swab test existed, and that the photographs he requested were irrelevant to his defense of the lewd conduct charge. Gonzalez does not suggest that Bowers did not provide him with assistance in good faith, or that Bowers's assistance was not in his best interest.

The standard for a prison official to deny a request for documentary evidence is similar to the standard applicable to a denial of a request for a witness: the official may deny a request where it is irrelevant or unnecessary, Scott v. Kelly, 962 F.2d 145, 147 (2d Cir. 1992), but the burden is on the prison official to show the rationality of the denial. Kingsley, 937 F.2d at 30-31. Such a showing may be made either during or after a disciplinary proceeding. See Russell, 35 F.3d at 58.

Here, Gonzalez's employee assistant provided him with the log file relating to the incident, denied knowledge of any swab tests in Gonzalez's case or any other case, and denied Gonzalez's requests for photographs of his cell as irrelevant. Gonzalez claims that the swab test was conducted to determine whether he had ejaculated, and that the prison's failure to produce the results of the test supports the inference that he did not. Even assuming that the test results

exist, they would have been irrelevant to Gonzalez's defense, because ejaculation is not a required element of the conduct charged. No such claim was made in Fay's report. In other words, Gonzalez could have intentionally exposed himself to Fay without having ejaculated. With respect to the photographs, Gonzalez argues that they would have been relevant to support his claim that the toilet was near the cell door, which could have supported his claim that he was urinating at the time of the inmate count and that his exposure was therefore unintentional. But in light of Officer Fay's testimony, the proximity of the toilet to the cell door does not make it more or less likely that Gonzalez's exposure was intentional. Moreover, corrections officers assigned to WCF, including Chalk, may be assumed to know the layout of cells, particularly when guided by the inmate's oral explanation.

Even assuming that photographs of the cell and alleged test results were relevant, Bowers's failure to provide them to Gonzalez would constitute harmless error. See Powell, 953 F.2d at 750. Chalk's determination was based on the report and supporting testimony of Officer Fay, and none of the requested documents would have contradicted any statement made by Fay in her report or at the hearing. Fay stated in her report that the exposure appeared to be intentional, and reiterated at the hearing that the incident was "definitely not" a misunderstanding.

3. Gonzalez's additional question at the hearing

Gonzalez's final objection was to Chalk's denial of his request to ask Fay whether Gonzalez was facing the toilet in his cell at the time of the incident. This denial is not reflected in the transcript of the hearing; to the contrary, the hearing transcript shows that Gonzalez was able to ask all the questions he sought to have answered:

> Chalk: Okay, Mr. Gonzalez, I've asked the three questions, do you have any additional uh questions for Officer Fay?

>Gonzalez: No, that's it.
>Chalk: Okay, Okay [sic], this is the only witness you wanted, you have no further witness' [sic] to call.
>Gonzalez: No, that's it.

Tr. at 8. Gonzalez nevertheless states that Chalk "flat out rejected Plaintiff's question posed to Fay as to if he was standing by the toilet bowl/urinal when she observed him." (Def. Resp. at 21-22) Gonzalez contends that this denial indicates that Chalk was biased against him at the outset of the disciplinary hearing but provides no support for this accusation aside from Chalk's exclusion of his question. Such "conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc., 814 F.2d at 887. Further, even if the exclusion of this question were deemed error, such error would be harmless because it fails to contradict Fay's testimony and is not relevant to the conduct charged. See Powell, 953 F.2d at 750. According to Gonzalez's own account, he was simultaneously facing the toilet and exposing himself to officer Fay. (Tr. at 4)

In sum, the disciplinary hearing comported with the requirements of due process. Gonzalez was provided with advance written notice of the disciplinary charges, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by Chalk stating the evidence relied on and the reasons for the disciplinary action. Further, Chalk's determination was based on sufficient reliable evidence to satisfy the "some evidence" standard. Both Chalk and Sergeant Bowers permissibly excluded documentary evidence and witness testimony as irrelevant or redundant. While it may well be that the incident in question was based on a misunderstanding as Gonzalez claims, this Court may not second-guess the conclusions of a prison disciplinary proceeding conducted in a manner that comports with the requirements of the Fourteenth Amendment. Hill, 472 U.S. at 455-56. Accordingly, Gonzalez's complaint fails to state a claim for relief under 42 U.S.C. § 1983.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (Dkt. No. 18) is GRANTED. The Clerk is directed to enter judgment in favor of defendant and close the case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 1, 2014